An annual fee of $60.00 will be charged to your account on April 1st of each year. The annual fee will be waived when the average monthly outstanding balance for the previous 12 months was $5,000 or more. If the account has been opened for 6 months or less by April 1 of any year, no fee will be charged.

**(B) Late Charge**

Your payment will be late if it is not received by us within 10 days of the "Payment Due Date" shown on your periodic statement. If your payment is late you may be assessed a late charge of $45.00.

**(C) Other Prepaid Finance Charges:** You will be charged the following prepaid FINANCE CHARGES at the time your account is opened:

Payable To Others:

| | |
|---|---|
| Mortgage Broker Fee to PRIME MORTGAGE FUNDING | $ |
| Processing Fee to PRIME MORTGAGE FUNDING | $ |
| Underwriting Fee to CU Funding | $695.00 |
| Administration Fee to CU Funding | $795.00 |
| Overnight Delivery Fee to CU Funding | $65.00 |
| Closing/Escrow Fee to TICOR TITLE | $ |
| Doc Fee to CU Funding | $250.00 |
| Payable To Cal State 9 Credit Union: | |
| Flood Certification | $15.00 |
| Tax Service Fee | $50.00 |
| Wire Transfer Fee to Cal State 9 Credit Union | $15.00 |

**(D) Other Charges:** You also agree to pay the following fees and charges necessary to open your account:

Payable To Others:

| | |
|---|---|
| Appraisal Fee to PRIME MORTGAGE FUNDING | $ |
| Credit Report Fee to CU Funding | $13.00 |
| Notary Fees to TICOR TITLE | $ |
| Recording Fee to TICOR TITLE | $78.00 |
| Recording Request for Notice of Default | $9.00 |
| Title Insurance to TICOR TITLE | $ |
| Document Preparation Fee to TICOR TITLE | $ |
| Payable To Cal State 9 Credit Union: | |
| Lenders Documentation Review Fee | $40.00 |
| Membership Fee | $15.00 |

**(E) Conditions Under Which Other Charges May be Imposed.** You agree to pay all the other fees and charges to your Credit Line as set forth below:

**Returned Items.** You may be charged $18.00 if you pay your Credit Line obligations or advance your credit line with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $15.00 when you request a stop payment on your account.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account a Research Fee of $25.00 per hour plus Photocopy Fees of $.50 per copy whenever you request research and/or photocopies of checks or statements for purposes other than a billing error inquiry. However, if no research is required, a $3.50 per copy charge will be imposed for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Scheduled Fee Changes.** Your Annual Membership Fee may increase annually commencing with the first anniversary of your Account by an amount not to exceed $5.00 per year. The amount of your annual fee will appear on the first periodic statement following the anniversary of your Account.

**Other Fee Increases.** The Returned Payment Fee, Stop Payment Fee and Research Fee applicable to your Account may increase annually effective August 1st of each year commencing with the first year your Account is opened. The amount of these fees will increase to the amount then in effect as reflected in the credit union's information on credit union services. You may obtain a copy of the credit union's current information or credit union's services by telephoning or sending a written request to the billing address shown on your periodic statement, or by telephoning or inquiring at the credit union office at which you opened your Account.

**Additional Security Interest Fees.** A Subordination Fee of $300.00 will be due at the time you request, and Lender agrees, to subordinate its lien in favor of a senior lienholder in order to facilitate your refinance of or additional borrowing increase to a prior lien. Lender is not obligated to agree to such a request; may deny your request to subordinate its lien; and may request that you either reduce the amount of your existing credit line or pay Lender in full for all amounts due. In addition, you may be required to pay a Beneficiary Statement Fee or a Payoff Demand Statement Fee of $25.00 as provided by Section 2943 of the California Civil Code at the time you authorize a future lender or title insurance company to obtain a statement of the condition or a statement of all amounts due under your line of credit.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all fees for release of Lender's security interest in collateral securing this loan. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $45.00.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Modification Fee: A Modification Fee may be charged at the time you request a change to your credit limit or maturity date of your line of credit. The amount of this other charge is $200.00.

## 8. NOTICES

Unless applicable law requires a different method, any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder a notice of your different address. Any notice that must be given to Holder under this Agreement will be given by delivering it or mailing it by first class mail to the Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address.

## 9. SECURITY

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated the same date as this Agreement. The Security Instrument requires you to take certain actions to protect your home, which is located at the address shown above ("Property"). You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument. Some of the conditions of the Security Instrument are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 9 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Debt. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Debt in full. If Borrower fails to pay the Secured Debt in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

You also agree to obtain and maintain such insurance on the Property as Holder may require; you agree to

CALIFORNIA HELOC Agreement
9435.11                                    Page 5 of 9                                    9/01

maintain such insurance in the amounts and for the periods Holder requires. Unless prohibited by applicable law, the Account will be secured as well by proceeds of such insurance. You may obtain such insurance from the carrier of your choice, subject to Holder's right to disapprove your choice, which right will not be exercised unreasonably.

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense, and Holder may charge you a fee to do so. Holder is under no obligation to purchase any particular type or amount of coverage; as such, you, your equity in the Property, or the contents of the Property may not be protected to the extent you desire. Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the FINANCE CHARGE.

**10. CREDIT AND PROPERTY INFORMATION**

You agree to furnish personal financial information and information about the Property and your occupation of the Property reasonably requested by Holder from time to time. Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request. In addition, you authorize Holder, at Holder's expense, to make or have made credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information. You also authorize Holder to release information regarding the status and history of the Account to third persons, including without limitation credit bureaus, merchants, and financial institutions, to the extent permitted by applicable law.

**11. ASSIGNMENT**

Holder may assign or transfer this Agreement and the Security Instrument without notice to you. You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization; however, this Agreement is binding upon your heirs, successors, and legal representatives.

**12. TAX DEDUCTIBILITY**

You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

**13. DEFAULT**

You will be in default under this Agreement if:

(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the Account, including without limitation your application for the Account and your occupancy of the Property;

(B) You do not meet the repayment terms under this Agreement;

(C) Your action or inaction adversely affects the collateral for the Account (including without limitation the Property) or Holder's rights in the collateral under the Security Instrument, including, without limitation: (i) your failure to maintain insurance as required under the Security Instrument; (ii) your transfer of the Property as provided in the Security Instrument; (iii) your failure to maintain the Property or use of the Property in a destructive manner; (iv) your commission of waste of the Property; (v) your failure to pay taxes due on the Property or your failure to act such that a lien superior to Holder's lien is filed against the Property; (vi) the death of all of you; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property; (ix) the creation of a lien on the Property without Holder's permission; or (x) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected.

**14. REMEDIES FOR DEFAULT**

If you are in default, Holder may terminate the Account, require you to pay the entire outstanding Account Balance, and charge a termination fee and any collection fees unless otherwise prohibited from doing so by applicable law. Holder at Holder's option also may take one or more lesser actions. Such lesser actions may include without limitation reducing the Credit Limit. Holder may take action under this Section only after complying with any notice or cure provisions required under applicable law. In the event Holder elects not to terminate the Account or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again.

**15. SUSPENSION OF ACCOUNT AND REDUCTION OF CREDIT LIMIT**

Unless otherwise prohibited from doing so by applicable law, Holder may temporarily suspend the Account or reduce the Credit Limit if:

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Account;

(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances;

(C) You are in default of a material obligation of this Agreement or the Security Instrument; for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement;

(D) A governmental action prevents Holder from imposing the ANNUAL PERCENTAGE RATE or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit;

(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe practice;

(F) The ANNUAL PERCENTAGE RATE reaches the maximum rate permitted under this Agreement; or

(G) Any of you requests to do so; provided, that Holder may require that any such request be in writing and sent to Holder by certified mail, and that Holder may require that any request to reinstate the Account also be in writing and sent by all of you.

If Holder suspends the Account or reduces the Credit Limit, Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement. Any request by you to reinstate the Account or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement.

## 16. CHANGING THE TERMS OF THIS AGREEMENT

Holder may not change the terms of this Agreement except under the following circumstances:

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available. Any new Index must have a historical movement similar to the original Index and together with a new Margin must result in an ANNUAL PERCENTAGE RATE substantially similar to the ANNUAL PERCENTAGE RATE in effect at the time the original Index or replacement index became unavailable.

(B) Holder may make changes that you agree to in writing.

(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Account.

(D) Holder may make changes to insignificant terms of this Agreement.

Unless otherwise prohibited from doing so by applicable law, Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum ANNUAL PERCENTAGE RATE is reached.

## 17. CANCELING THE ACCOUNT

You may cancel the Account at any time by notifying Holder in writing as provided in Section 8 above. Cancellation of the Account by any of you will cancel the Account for all of you. However, Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations.

If the Account is canceled or terminated for any reason, you will not be entitled to a refund of or a credit for any initial annual fees or other fees and charges payable under the Account, unless otherwise required by applicable law. In addition, you must return to Holder the Checks, and any other devices you may have to access the Account. Any further use of such devices may be considered fraudulent. Regardless of such cancellation or termination, you will remain obligated to repay the Account Balance in full, including any money advanced to you after the Account has been canceled or terminated.

Cal State 9 Credit Union has agreed to credit you $1,962.00 towards non-reoccurring closing costs at the time your Home Equity Line of Credit Account is opened provided your Account credit line amount is equal to or greater than $30,000 and your initial advance is equal to or greater than $10,000. If you close your Home Equity Line of Credit Account in less than three years from the opening date, or if you fail to maintain a minimum balance of $10,000 for the first 6 months, you will be required to reimburse Cal State 9 Credit Union for the $1,962.00 closing cost credit you initially received as a credit against the non-reoccurring closing costs. The amount of the closing cost credit you receive will also be itemized on your HUD1 or HUD1A Estimated and Final Settlement Statement.

## 18. LOAN CHARGES

If this Agreement is subject to a law that sets maximum Loan charges, and that law is finally interpreted so that the FINANCE CHARGE or other Loan charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. Holder may choose to make this refund by reducing the principal owed under the Account or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without

any prepayment charge. Your acceptance of any such refund made by direct payment to you will constitute a waiver of any right of action you might have arising out of such overcharge.

**19. SEVERABILITY**

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal, state, or local law, such provision or clause will be considered changed to the extent permissible and necessary to comply with such law. Otherwise, such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision.

**20. YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act.

**Notify Holder In Case of Errors or Questions About Your Bill**

If you think the Billing Statement is wrong, or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement. Write to Holder as soon as possible. Holder must hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared. You can telephone Holder, but doing so will not preserve your rights.

In your letter, give Holder the following information:

(A) Your name and account number.

(B) The dollar amount of the suspected error.

(C) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Holder to pay the Account automatically from your savings, checking, or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur.

**Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice**

Holder must acknowledge your letter within 30 days, unless Holder has corrected the error by then. Within 90 days, Holder must either correct the error or explain why Holder believes the Billing Statement was correct.

After Holder receives your letter, Holder cannot try to collect any amount you question or report you as delinquent. Holder can continue to bill you for the amount you question, including FINANCE CHARGES, and Holder can apply any unpaid amount against the Credit Limit. You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question.

If Holder finds that Holder made a mistake on the Billing Statement, you will not have to pay any FINANCE CHARGES related to any questioned amount. If Holder did not make a mistake, you may have to pay FINANCE CHARGES, and you will have to make up any missed payments on the questioned amount. In either case, Holder will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent. However, if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement. And Holder must tell you the name of anyone Holder reported you to. Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is.

If Holder does not follow these rules, Holder can't collect the first $50.00 of the questioned amount, even if the Billing Statement was correct.

**21. COLLECTION COSTS**

Holder may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate an automatic stay or injunction), and appeals. You will also pay any court costs, in addition to all other sums provided by law.

**22. DELAY IN ENFORCEMENT**

Holder may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If holder delays or waives any rights, Holder may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of Holder's right to terminate your account in the future if you have not paid.

**23. PREPAYMENT**

   Subject to paragraph 17, you may prepay all or any amount owing under this Account at any time without penalty, except Holder will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Account. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Cal State 9 Credit Union, P.O. Box 271768, Concord, CA 94527-1768.

**24. TAX CONSEQUENCES**

   You understand that neither Holder, nor any of Holder's employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Account, including the deductibility of interest, and that neither Holder nor Holder's employees or agents will be liable in the event interest on your Account is not deductible. You should consult your own tax advisor for guidance on this subject.

**25. NOTIFY US OF INACCURATE INFORMATION**

   Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy should be sent to Holder at the address on your periodic billing statement.

**26. GOVERNING LAW**

   This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of California. This Agreement has been accepted by us in the State of California.

**27. CHOICE OF VENUE**

   If there is a lawsuit, you agree upon Holder's request to submit to the jurisdiction of the courts of Contra Costa County, State of California.

**28. ACKNOWLEDGEMENT**

   By signing this Agreement, you acknowledge that you have read this Agreement. By signing below, you agree to the terms and conditions of this Agreement. You also acknowledge and agree that you received a complete copy of this Agreement.

NOTICE TO BORROWER
Do not sign this Agreement/Note if it contains blank spaces.
All spaces should be completed before you sign.

BORROWER - Shaun Gatli - DATE

[Sign Original Only]

8000001918

| | | | |
|---|---|---|---|
| DOCUMENT: 19905467 | | Pages: | 2 |

RECORDING REQUESTED BY:
Cal State 9 Credit Union

WHEN RECORDED MAIL TO:

Orion Financial Group, Inc.          ~~poration~~
2860 Exchange Blvd. Ste 100
Southlake, TX 76092

Fees.... 14.00
Taxes...
Copies..
AMT PAID 14.00

REGINA ALCOMENDRAS          RDE # 002
SANTA CLARA COUNTY RECORDER    7/02/2008
Recorded at the request of     10:36 AM
Mortgage Company

Loan Number:   91426-01
County:  Santa Clara

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to: BOSCO CREDIT LLC, all beneficial interest under that certain Variable Interest Rate Revolving Line Of Credit Deed Of Trust dated December 12, 2006, executed by SHAUN CATLI, and BRIAN Q. CATLI, Trustor(s), to Cal State 9 Credit Union as Trustee, and recorded December 22, 2006, as Instrument No. 19236912 and of the Official Records in the office of the County Recorder of Santa Clara County, California, describing land therein as:

> See Exhibit A-Legal Description attached hereto and made a part hereof.

And more commonly known as 3114 DRYWOOD LANE, SAN JOSE, CALIFORNIA, 95132

TOGETHER with the Home Equity Line of Credit Agreement and Disclosure Statement or Notes therein described or referred to, together with all modifications thereto, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated May 27, 2008

Orion Financial Group Inc.

*08009989*

CATLI, SHAUN
FCMC/OPD BOSCO
BOSCO CREDIT LLC

Cal State 9 Credit Union

*Sarah Leal*

By: Sarah Leal
HELOC Department Assistant Manager

STATE OF CALIFORNIA          )
COUNTY OF CONTRA COSTA )

On May 27, 2008 before me, Cherilyn D. G. Lewis, a Notary Public, personally appeared Sarah Leal, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: *Cherilyn Lewis*          (seal)
Notary Name:                    Cherilyn D. G. Lewis
Notary Telephone Number:        925-363-2757
Notary Registration Number:     1541314
Notary Commission Expiration:   Jan. 3, 2009
Notary County-Principal place of business:  Contra Costa County

CHERILYN D. G. LEWIS
Commission # 1541314
Notary Public - California
Contra Costa County
My Comm. Expires Jan 3, 2009

**Exhibit C**

Ticor Title
3200235l

After Recording Return To:
CAL STATE 9 CREDIT UNION
P.O. BOX 271768
CONCORD, CA 94527-1768

Prepared By:
SARAH MCKINLEY
CU FUNDING
2300 CLAYTON ROAD #1490
CONCORD, CALIFORNIA 94520
(925) 771-1029

DOCUMENT:  19236912 | Pages:  14

| Fees..... | 48.00 |
| Taxes... | |
| Copies.. | |
| AMT PAID | 48.00 |

REGINA ALCOMENDRAS          RDE # 010
SANTA CLARA COUNTY RECORDER
Recorded at the request of   12/22/2006
Ticor Title Company          8:00 AM

[Space Above This Line For Recording Data]

## VARIABLE INTEREST RATE REVOLVING LINE OF CREDIT DEED OF TRUST

CATLI
Loan #: .
PIN:

**DEFINITIONS**

(A) "Security Instrument" means this document, which is dated DECEMBER 12, 2006, together with all riders to this document.
(B) "Borrower" is Shaun Catli, an unmarried man and Brian Q. Catli, an unmarried man as joint tenants. Borrower is the trustor under this Security Instrument.
(C) "Lender" is CAL STATE 9 CREDIT UNION. Lender is a CREDIT UNION, organized and existing under the laws of the State of CALIFORNIA. Lender's address is P.O. BOX 271768, CONCORD, CA 94527-1768. Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CAL STATE 9 CREDIT UNION.
(E) "Secured Indebtedness" means:

(1) The debt, interest, finance charges, and other fees and charges incurred under the terms of the Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC") dated DECEMBER 12, 2006; the HELOC matures on DECEMBER 12, 2031.
(2) Any advance made to Borrower or obligation incurred by Borrower pursuant to any contract or evidence of indebtedness benefiting Lender, regardless of whether such advance has been made or such obligation has been incurred in whole or in part as of the date of this Security Instrument.
(3) Any sum paid and expense incurred by Lender under the terms of this Security Instrument.

(F) "Credit Limit" means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time. The Credit Limit is $95,000.00. Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, finance charges, and other fees and charges validly incurred by Borrower under this Security Instrument. The Credit Limit also does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider ☐ Other(s) [specify] _____

(I) "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as applicable final, non-appealable judicial opinions.

CALIFORNIA HELOC Deed of Trust                                    9/01
     9433.5                    Page 1 of 7                   CALOCRS

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Secured Indebtedness, and all renewals, extensions, and modifications of the Secured Indebtedness; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the HELOC. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CLARA:
Assessor's Identification Number _____
[Add if LOS ANGELES County]
See attached Exhibit A--Legal Description of Real Property, which is attached to this Deed of Trust and made part of this Deed of Trust as if fully set forth herein.
which currently has the address of 3114 DRYWOOD LANE, SAN JOSE, CALIFORNIA 95132 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and shall defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

## ADVANCES

Any advances made under the HELOC may be made, repaid, and remade from time to time, subject to the limitations of the HELOC. Regardless of whether the Secured Indebtedness is reduced to a zero balance, this Security Instrument shall remain in effect until released or reconveyed.

Any advances made in excess of the Credit Limit shall not be secured by this Security Instrument if prohibited by Applicable Law or, if not prohibited by Applicable Law, unless (i) Lender agrees to increase the Credit Limit and complies with any subsequent disclosure, rescission, and other requirements under Applicable Law and (ii) Borrower agrees to execute any documents Lender requires to evidence and secure the increase in the Credit Limit. Lender shall not be obligated in any way under this Security Instrument to increase the Credit Limit or to make additional or future loans or advances in any amount.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Secured Indebtedness; Performance of Obligations.** Borrower shall pay when due the Secured Indebtedness and shall perform all of Borrower's obligations under the HELOC and this Security Instrument.

**2. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and the dues, fees, and assessments of a condominium association, homeowners association, or similar organization, if any.

Borrower shall make all payments and comply with all covenants as and when required by any mortgage, deed of trust, security agreement, or other lien document evidencing a lien that is prior to this Security Instrument and that is approved by Lender. Borrower shall not modify, extend, or increase the amount secured by such prior lien document without Lender's written consent.

Upon demand Borrower shall furnish to Lender satisfactory evidence of payment of such taxes, assessments, charges, fines, impositions, and prior liens.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

**3. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against fire, hazards included within the term "extended coverage," flood, and any other hazards including without limitation earthquakes, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences may change during the term of the HELOC. Borrower may obtain such insurance from the insurance carrier of Borrower's choice, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

**4. Preservation, Maintenance, and Protection of the Property; Occupancy and Use of the Property; and Inspection.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value, due to its condition, such as would adversely affect Lender's security in the Property. Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower shall not be relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall not materially change the present occupancy and use of the Property without Lender's written consent. Borrower shall not use the Property in an illegal manner or for any illegal use such as would subject the Property to seizure.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**5. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security

Instrument, including Lender's secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5.

Any amounts disbursed by Lender under this Section 5 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If the Property is located in a condominium project or a planned unit development, Borrower shall perform all of Borrower's obligations under the covenants, by-laws, or regulations of the condominium project or planned unit development.

**6. Condemnation.** Borrower shall give Lender prompt notice of any condemnation or eminent domain proceeding or action pending or threatened against the Property and authorizes Lender to intervene in Borrower's name in any such proceeding or action. Borrower assigns to Lender any money awarded to Borrower pursuant to such proceeding or action, and such money shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

**7. Loan Charges.** If the HELOC is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the HELOC exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits shall be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the HELOC or by making a direct payment to Borrower. If a refund reduces principal, the reduction shall be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the HELOC). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**8. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement shall satisfy the corresponding requirement under this Security Instrument.

**9. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. In the event that any provision or clause of this Security Instrument or the HELOC conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the HELOC that can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**10. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the HELOC (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant, and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the HELOC without the co-signer's consent.

Subject to the provisions of Section 11, any successor to the interests of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**11. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 11, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Indebtedness. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Indebtedness in full. If Borrower fails to pay the Secured Indebtedness in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. Hazardous Substances.** As used in this Section 12: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, or allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) that creates an Environmental Condition, or (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower promptly shall give Lender written notice of (a) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**13. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Borrower shall not be required to pay in escrow to Lender funds for taxes, insurance, and other assessments.

**14. Default.** Borrower shall be in default under the HELOC and this Security Instrument if without limitation any of the following occur: (a) Borrower engaged or engages in fraud or material misrepresentation in connection with any aspect of the HELOC or this Security Instrument, including without limitation Borrower's application for the HELOC and Borrower's occupancy of the Property; (b) Borrower does not meet repayment terms under the HELOC; (c) Borrower's action or inaction adversely affects the collateral for the HELOC (including without limitation the Property) or Lender's rights in the collateral including without limitation: (i) Borrower's failure to maintain the insurance required under Section 3 of this Security Instrument; (ii) Borrower's transfer of the Property as provided in Section 11 of this Security Instrument; (iii) Borrower's failure to maintain the Property or use of the Property in a destructive manner; (iv) Borrower's commission of waste of the Property; (v) Borrower's failure to pay taxes due on the Property or Borrower's failure to act such that a lien superior to Lender's lien is filed against the Property; (vi) the death of all Borrowers; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against Borrower that subjects the Property to action that adversely affects Lender's interest in the Property; (ix) the creation of a lien on the Property without Lender's permission; or (x) a superior lien holder forecloses on the Property such that Lender's interest in the Property is adversely affected.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**15. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 11 unless Applicable Law provides otherwise). The notice shall comply with Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of the Secured Indebtedness without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 15, including without limitation reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give or cause Trustee to give all notices required by Applicable Law in the time and manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property to the highest bidder at public auction at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying the Property without covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable Trustee's and attorneys' fees; (b) to the Secured Indebtedness; and (c) any excess to the person or persons legally entitled to it.

If Borrower is in default, Lender may elect not to accelerate the Secured Indebtedness but instead may refuse to make additional advances or reduce the Credit Limit. Even if Lender elects not to exercise any remedy under this Security Instrument, Lender does not forfeit or waive Lender's right to do so at a later time or to do so if Borrower is in default again.

**16. Reconveyance.** Upon payment in full of the Secured Indebtedness, Lender shall request Trustee to reconvey the Property and surrender this Security Instrument and all documents evidencing the Secured Indebtedness to Trustee. Lender shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**17. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument is recorded, and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**18. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**19. Property Insurance.** The third paragraph of Section 3 is revised to read as follows; all other terms and provisions shall remain unchanged.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Riders executed by Borrower and recorded with it. Borrower also acknowledges receipt of a copy of this Security Instrument.

_____ 12/13/06
BORROWER - Shaun Catli - DATE

_____ 12/13/06
Brian Q. Catli - DATE

[Space Below This Line For Acknowledgment]

State of California
County of Santa Clara

) ss
) ss

On December 13, 2006 before me, Jed Quiambao, a Notary Public, personally appeared Shawn Catti and Brian Q. Catti

☐ personally known to me
OR
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in her/his/their authorized capacity, and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Seal]

Notary Public

My commission expires: December 11, 2009



JED QUIAMBAO
COMM. # 1628953
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Dec. 11, 2009

CALIFORNIA HELOC Deed of Trust
9433.5

Page 7 of 7

9/01
CALOCRS

Escrow No.: 06-32022351-MS
Locate No.: CATT0732-0732-0002-0032022351
Title No.: 06-32022351

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN JOSE , COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 544 of Tract No. 3565 Northwood Park Unit No. 6 in the City of San Jose, County of Santa Clara, State of California, as shown on map filed Book 167, Page 6 and 7 of Maps, in the office of the County Recorder of said County.

Excepting therefrom the underground water or rights thereto with no right of surface entry as granted to San Jose Water Works, a California Corporation by instrument recorded in Book 6451, page 120, Official Records.

Exhibit Page - Legal(exhibit)(8-02)

# HOME EQUITY LINE OF CREDIT ADJUSTABLE RATE RIDER
*(The Wall Street Journal Prime Rate Index)*

CATLX
Loan #: .

THIS HOME EQUITY LINE OF CREDIT ADJUSTABLE RATE RIDER is made this 12TH day of DECEMBER,  2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Agreement") of the same date given by the undersigned ("Borrower") to secure Borrower's Home Equity Adjustable Rate Revolving Line of Credit (the "HELOC") to Cal State 9 Credit Union ("Lender" and/or "Holder") of the same date and covering the property described in the Security Instrument and located at:

3114 DRYWOOD LANE, SAN JOSE, CA 95132
[Property Address]

THE HELOC NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE IS NO LIMIT TO THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME. THE MAXIMUM INTEREST RATE WHICH MAY BE CHARGED IS 18.00% OR THE MAXIMUM SET BY APPLICABLE STATE LAW, WHICHEVER IS LESS.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.      ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The HELOC provides for an initial interest rate of 14.000%. The HELOC provides for changes in the adjustable interest rate and the monthly payments as follows:

2.      ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)     Fixed Interest Rate Period

9430.5                          Page 1 of 3

The fixed rate period on your Home Equity Line of Credit will begin on the day the account is opened and will end on the first calendar day of the first calendar quarter (Jan, Apr, Jul, Oct) following the 3-year anniversary of the account being opened. During this period, your ANNUAL PERCENTAGE RATE will not be subject to change.

(B)     **Variable Interest Rate Period**

1.     **First Interest Rate Change:** On the first calendar day of the first calendar quarter (Jan, Apr, Jul, Oct) following the 3-year anniversary of the account being opened, the ANNUAL PERCENTAGE RATE will be adjusted to an amount which represents the sum of the then current Index plus your Margin. There is no limit on the amount by which the ANNUAL PERCENTAGE RATE may change at this time. However, the ANNUAL PERCENTAGE RATE will never exceed the lesser of 18.00% or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum ANNUAL PERCENTAGE RATE"). The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

2.     **Subsequent Interest Rate Changes:** Subsequent to your First Interest Rate Change, the ANNUAL PERCENTAGE RATE can change quarterly on the first calendar day of January, April, July, and October and will equal the sum of the Index plus the Margin on your loan. There is no limit on the amount by which the ANNUAL PERCENTAGE RATE can change at any one time. The ANNUAL PERCENTAGE RATE will never exceed the lesser of 18.00% or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum ANNUAL PERCENTAGE RATE"). The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

(C)     **The Index:** Beginning with the first Change Date, your adjustable interest rate will be based on an Index. The "Index" is the Prime Rate published in the Money Rates column of *The Wall Street Journal*. When a range of rates have been published the lowest rate will be used. The most recent Index figure available as of the last business day of the month prior to the most recent Change Date is called the "Current Index". If the Index is no longer available, the HELOC Holder will choose a new Index that is based upon comparable information. The HELOC Holder will give notice of this choice.

(D)     **Calculation Of Change:** Before each Change Date, the HELOC Holder will calculate your new interest rate by adding 5.500% to the Current Index. This amount will be your new interest rate until the Change Date.

(E)     **Effective Date of Changes:** Your new interest rate will become effective on each Change Date. You will pay the amount of your new monthly payment beginning on the first monthly payment date after the Change Date until the amount of your monthly payment changes again.

(F)     **Notice of Changes:** If you have a balance owing on your HELOC or have any account activity, you will be sent a periodic statement. Your statement will identify the Minimum Payment you must make for that billing period and the date it is due. Your statement will also include the telephone number of a person who will answer any questions you may have.

(G)     **Payment Amount and Change:**
You promise to pay the Holder any amounts owed under this Agreement as follows:

1.     **Draw Period**

9430.5                          Page 2 of 3

During the Draw Period, no later than the payment date specified in your Billing Statement you must pay at least the "Minimum Monthly Draw Period Payment". The Minimum Monthly Draw Period Payment is the greatest of: (1) the amount of the accrued FINANCE CHARGES; or (2) $75.00.

**2.    Repayment Period**

During the Repayment Period, no later than the payment date specified in your Billing Statement you must pay at least the "Minimum Monthly Repayment Period Payment". The Minimum Monthly Repayment Period Payment is the greater of: (1) an amount equal to 1.5% of your Account Balance or (2) $75.00.

During the Draw and Repayment Periods, in no event will the minimum monthly payment fall below $75.00. If the Account Balance is less than $75.00, it must be paid in full.

The required minimum payment may not repay the outstanding balance by the end of the repayment period. If this happens, you will be required to make a single balloon payment at the end of the repayment period. Unless required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender (which may or may not be us) willing to lend you the money. If you refinance the balloon payment with us, you may have to pay some or all of the closing costs.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____   12/13/00
- BORROWER - Shaun Catli - DATE -

_____   12/13/00
Brian Q. Catli - DATE -

# 1-4 FAMILY RIDER
## (Assignment of Rents)

Loan #: .

THIS 1-4 FAMILY RIDER is made this 12TH day of DECEMBER, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to CAL STATE 9 CREDIT UNION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3114 DRYWOOD LANE, SAN JOSE, CA 95132

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent that they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the

MULTISTATE 1-4 FAMILY RIDER                    Page 1 of 3
      10418.5

"Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 15 is deleted.

**F. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, at the Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rent(s) are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rent(s) collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all sums are secured by the Security Instrument are paid in full.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

BORROWER - Shaun Catli - DATE - 12/13/06

Brian Q. Catli - DATE - 12/13/06

MULTISTATE 1-4 FAMILY RIDER                      Page 3 of 3
         10418.5

**Exhibit D**

RECORDING REQUESTED BY:
Cal State 9 Credit Union

WHEN RECORDED MAIL TO:

Orion Financial Group, Inc.
2860 Exchange Blvd. Ste 100
Southlake, TX 76092

**DOCUMENT: 19905467**     Pages:   2

| | |
|---|---|
| Fees . | 14 00 |
| Taxes . | |
| Copies .. | |
| AMT PAID | 14 00 |

...poration    REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER    RDE # 002
Recorded at the request of    7/02/2008
Mortgage Company    10:36 AM

Loan Number:    91426-01
County: Santa Clara

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to: BOSCO CREDIT LLC, all beneficial interest under that certain Variable Interest Rate Revolving Line Of Credit Deed Of Trust dated December 12, 2006, executed by SHAUN CATLI, and BRIAN Q. CATLI, Trustor(s), to Cal State 9 Credit Union as Trustee, and recorded December 22, 2006, as Instrument No. 19236912 and of the Official Records in the office of the County Recorder of Santa Clara County, California, describing land therein as:

     See Exhibit A-Legal Description attached hereto and made a part hereof.

And more commonly known as 3114 DRYWOOD LANE, SAN JOSE, CALIFORNIA, 95132

TOGETHER with the Home Equity Line of Credit Agreement and Disclosure Statement or Notes therein described or referred to, together with all modifications thereto, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated May 27, 2008

**Orion Financial Group Inc.**

CATLI, SHAUN    *08009989*
FCMC/OPD BOSCO
BOSCO CREDIT LLC

Cal State 9 Credit Union

*Sarah Leal*

By: Sarah Leal
HELOC Department Assistant Manager

STATE OF CALIFORNIA    )
COUNTY OF CONTRA COSTA )

On May 27, 2008 before me, Cherilyn D. G. Lewis, a Notary Public, personally appeared Sarah Leal, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: *Cherilyn D. G. Lewis* (seal)
Notary Name:    Cherilyn D. G. Lewis
Notary Telephone Number:    925-363-2757
Notary Registration Number:    1541314
Notary Commission Expiration:    Jan. 3, 2009
Notary County-Principal place of business: Contra Costa County

CHERILYN D.G. LEWIS
Commission # 1541314
Notary Public - California
Contra Costa County
My Comm. Expires Jan 3, 2009

Description: Santa Clara,CA Document - DocID 19905467 Page: 1 of 2
Order: 4 Comment:

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Sonia A. Plesset (SBN 156456)
THE WOLF FIRM, A Law Corporation
2955 Main Street
Second Floor
Irvine, CA 92614
TELEPHONE NO.: 949-720-9200    FAX NO.: 949-608-0129
ATTORNEY FOR *(Name):* NATIONSTAR MORTGAGE LLC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 161 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Old Courthouse

FOR COURT USE ONLY

ENDORSED
2015 APR -6 A 11: 56

CASE NAME: BOSCO CREDIT, LLC. v. SHAUN CATLI, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 115CV278095 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[X] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 3, 2015

Sonia A. Plesset, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

ATTACHMENT CV-5012

## CIVIL LAWSUIT NOTICE
**Superior Court of California, County of Santa Clara**
191 N. First St., San Jose, CA 95113

CASE NUMBER: **115 CV 2789 05**

### PLEASE READ THIS ENTIRE FORM

_PLAINTIFF_ (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the _Complaint, Summons,_ an _Alternative Dispute Resolution (ADR) Information Sheet,_ and a copy of this _Civil Lawsuit Notice,_ and you must file written proof of such service.

---

_DEFENDANT_ (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the _Complaint, using the proper legal form or format,_ in the Clerk's Office of the Court, within **30 days** of the date you were served with the _Summons_ and _Complaint;_
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.**

---

_RULES AND FORMS:_ You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

_CASE MANAGEMENT CONFERENCE (CMC):_ You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a _Case Management Statement_ (Judicial Council form CM-110) at least 15 calendar days before the CMC.

**You or your attorney must appear at the CMC.** You may ask to appear by telephone – see _Local Civil Rule 8._

Your Case Management Judge is: **William Elfving**                     Department: **3**

The 1st CMC is scheduled for: (Completed by Clerk of Court)
Date: **AUG 0 4 2015**     Time: **2:15pm**   in Department: **3**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
Date: _____     Time: _____   in Department:_____

---

_ALTERNATIVE DISPUTE RESOLUTION (ADR):_ If all parties have appeared and filed a completed _ADR Stipulation Form_ (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

_WARNING:_ Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET**
**CIVIL DIVISION**

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would be helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

Santa Clara County Superior Court
ADR Administrator
408-882-2530

Santa Clara County DRPA Coordinator
408-792-2784

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET**
**CIVIL DIVISION**

RECEIVED

2015 APR 30  PM 1: 05

U.S. ATTORNEY'S OFFICE